**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**NOEL J.,**

        **Plaintiff,**

                                  **Case No. 3:20-cv-15832**

      **v.**                              **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

        **Defendant.**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Noel J. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

On January 5, 2017, Plaintiff filed an application for benefits, alleging that she has been disabled since January 1, 2017. R. 61, 69, 154−57. The application was denied initially and upon reconsideration. R. 83−87, 92−94. Plaintiff sought a *de novo* hearing before an administrative

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

law judge. R. 95−96. Administrative Law Judge ("ALJ") Peter Lee held a hearing on February 19, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 35−60. In a decision dated March 26, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 1, 2017, Plaintiff's alleged disability onset date, through the date of that decision. R. 15−24. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 15, 2020. R. 2−7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 13, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[2] On the same day, the case was reassigned to the undersigned. ECF No. 13. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through September 30, 2020. R. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between January 1, 2017, her alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff's chronic pain syndrome and obesity were severe impairments. *Id.* The ALJ also found that Plaintiff's diagnosed hypertension, hyperlipidemia, status post breast cancer, depressive disorder, and anxiety disorder were not severe impairments. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19−21.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 20−23. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a marketing manager, receptionist, and insurance agent. R. 23. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 1, 2017, her alleged disability onset date, through the date of the decision. *Id.*

Plaintiff disagrees with the ALJ's findings at steps two and four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Motion,* ECF No. 17. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected

consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 18.

## IV.    DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating the opinions of Plaintiff's treating physician, Betty Hammond, M.D. *Plaintiff's Brief*, ECF No. 17, pp. 22−27. This Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[3] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight,

---

[3] As previously noted, Plaintiff's claim was filed on January 5, 2017. For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R.

especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still

---

§ 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'"
*Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225
F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the
government 'may properly accept some parts of the medical evidence and reject other parts,' the
government must 'provide some explanation for a rejection of probative evidence which would
suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994));
*Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a
non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642
F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the
wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been
rejected is required so that a reviewing court can determine whether the reasons for rejection
were improper.") (internal citation omitted).

At step four of the sequential evaluation process, the ALJ in this case found that Plaintiff
had the RFC to perform light work subject to certain additional limitations, as follows:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform light work as defined in 20 CFR
> 404.1567(b) except she can never climb ropes, ladders or scaffolds, or be exposed
> to unprotected heights or hazardous machinery. The claimant can occasionally
> climb stairs and ramps, stoop, and crouch, but she cannot crawl. Lastly, the claimant
> can frequently balance.

R. 20. In reaching this determination, the ALJ considered, *inter alia*, two reports from Dr.
Hammond, Plaintiff's treating physician. R. 22. Specifically, on September 1, 2017, Dr.
Hammond stated (the "first report"):

> Ms. Noel [J.] is a patient under my care. I have been her physician since 2014. I am
> supporting her request for disability based on her chronic rectal pain since 2005.
> Shortly after a screening colonoscopy in 2005, she developed severe rectal pain
> which has been present daily since that time. Her disabling condition is called
> Levator Ani Syndrome, but hers is far more painful and long lasting than the typical

10

case. The pain is often 10/10 on a pain scale with ten being the highest degree of pain. She has seen multiple specialists including General Surgery, Colorectal Surgery, Physiatry, and Pain Management. She has undergone Physical Therapy targeted to relieving problems with the pelvic floor. She has been on various pain medications and antidepressants (because of their often therapeutic effect on pain). She has had biofeedback, acupuncture, nerve blocks, epidurals. and a spinal stimulator trial. Unfortunately, nothing has given her more than a few minutes of relief and nothing has consistently benefited her. Having suffered through the last 12 years, Ms. [J.] has found that the pain recently has been worsening and affecting her ability to concentrate at work is becoming impossible. *Sitting aggravates the pain, standing aggravates the pain and walking more than a few feet also aggravates the pain.* In order to relieve her pain, she would have to take high doses of controlled substances that would also leave her unable to work. With those medications, there are also the dangers to health and concerns regarding addiction.

Ms. [J.'s] condition is not common and her surgeons agree that her degree of pain is quite severe and that none of the many therapies tried have had much, if any, success. It is difficult to complete the form, the "Medical Source Statement," as her condition is all-encompassing. The pain is present with any activities that she performs and has been increasing over time. It is difficult to predict which activities may exacerbate the pain, because *all activities involve pain for her.* In my opinion, Ms. [J.] is disabled due to chronic rectal pain and I support her application for disability.

R. 454 (emphasis added).

On January 24, 2019, Dr. Hammond reported (the "second report") as follows:

Ms. Noel [J.] continues to be a patient under my care. The purpose of this letter is to enthusiastically support her request for disability. Regarding the chronic and severe rectal pain which she has endured since 2005, there is little I can add to my letter of September 1, 2017 except to say that the pain continues despite consultations, medication, and physical therapy. Since that time, however, Ms. [J.] has been diagnosed with and gone through treatment for breast cancer. It was discovered on a routine screening mammogram. Following consultation with the Cancer Center of New Jersey physicians and testing, she was diagnosed with invasive ductal carcinoma of the breast. She had a partial mastectomy, received severeal [sic] rounds of Radiation Therapy, and is on medication which she will be taking for the next four years.

In addition to the diagnoses above, due to the many diagnoses, medications, doctor visits, therapies and tests, Ms. [J.] has also developed depression which is at times disabling. She is on medication but side effects have unfortuinately [sic] limited the therapeutic effect of the medication.

> While I understand that her original application for disability was on the basis of the chronic rectal pain, I also feel these new diagnoses are additional contributing factors to consider in granting Ms. J[.] disability which, in my opinion, she most decidedly deserves.

R. 518.

In crafting the RFC, the ALJ assigned "limited weight" to Dr. Hammond's opinions, reasoning as follows:

> Dr. Betty Hammond provided two separate opinions regarding the claimant's functional abilities. However, both opinions merely state that the claimant is disabled without specifying limitations in any particular activities or abilities (Exhibits 15F and 18F). The ultimate issue regarding an individual's ability to work is an issue reserved to the Commissioner, and as such, opinions from care providers that conclude an individual is disabled, are not entitled to any special or significant weight (20 CFR 416.927(e)(l)(3)). Therefore, I assign these opinions limited weight.

R. 22.

Plaintiff challenges this evaluation, arguing that the ALJ mischaracterized Dr. Hammond's reports as stating merely that Plaintiff is disabled without specifying limitations in any particular activities or abilities. *Plaintiff's Brief*, ECF No. 17, pp. 23−27. While Plaintiff concedes that opinions on issues reserved to the Commissioner are not entitled to any special deference, *id.* at 25−27, Plaintiff contends that Dr. Hammond actually articulated functional limitations when she stated that "[s]itting aggravates the pain, standing aggravates the pain, and walking more than a few feet also aggravates the pain" and that "all activities involve pain[.]" *Id.* at 24−25 (quoting R. 454) (internal quotation marks omitted). The Acting Commissioner agrees with the ALJ's characterization of Dr. Hammond's reports and points to the doctor's failure to complete the "Medical Source Statement" that might have clarified Plaintiff's limitations. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, pp. 12−13 (citing R. 454). The

12

Acting Commissioner also notes that Plaintiff failed to provide any treatment records from Dr. Hammond generated after July 2017. *Id.* at 12−13 n.5.

The Commissioner's arguments are not well taken. As Plaintiff points out, Dr. Hammond specifically opined in her first report that Plaintiff had limitations in her ability to sit, stand, and walk, and that "all activities" cause Plaintiff pain. R. 454. Contrary to the ALJ's characterization of the first report as merely a raw statement of disability, a conclusion reserved to the Commissioner, Dr. Hammond in fact provided functional limitations that the ALJ should have considered and weighed. *See Sutherland*, 785 F. App'x at 928; *Nazario*, 794 F. App'x at 209–10.

Furthermore, the Court cannot conclude that the ALJ's failure in this regard is harmless, particularly where the ALJ found that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms, [] *are inconsistent because the records do not indicate that the claimant would be severely limited in her ability to sit, stand or walk*[.]" R. 22 (emphasis added).

Finally, the Court also rejects the Acting Commissioner's suggestion that Dr. Hammond's failure to complete a "Medical Source Statement" form and Plaintiff's failure to provide treatment records generated after July 2017 support the ALJ's decision to discount Dr. Hammond's opinions. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, pp. 12−13. The ALJ did not rely on this evidence in weighing Dr. Hammond's opinions, R. 22, and the Acting Commissioner's *post hoc* rationalization in this regard must therefore be rejected. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001)

(stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question.") (citation omitted).

   This Court concludes that remand of the matter for further consideration of these issues is therefore  appropriate.[4] Moreover, remand is warranted even if, upon further examination of Dr. Hammond's opinions and the RFC determination, the ALJ again finds that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings.

---

[4] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Hammond's opinions and the RFC determination, the Court does not consider those claims.

Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

**V.      CONCLUSION**

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  March 8, 2022                                        *s/Norah McCann King*
                                                           NORAH McCANN KING
                                                           UNITED STATES MAGISTRATE JUDGE